JAMES A. ABORN *v.* THE BANK OF NORTH AMERICA.

The plaintiff sold to the defendant a lot of land, being a part of a larger lot by him owned, for a price agreed, and the title to a small portion of it being disputed by an adjoining proprietor, the parties entered into the following agreement:— " Whereas, the estate purchased by the Bank of N. A. of J. A. A. is in the deed thereof described as being thirty feet in width upon a line drawn at right angles to the north and south lines thereof, and a portion thereof is claimed by L. P. M., so that the said corporation is in possession only of twenty-nine feet and three-fourths of an inch in the width measured as above; and, whereas, it has been agreed between said Bank of N. A. and the said A., that upon the present payment by said bank to said A. of such proportional part of the purchase money, as twenty-nine feet and three-fourths of an inch are to thirty feet, the said A. will release the bank from all further claim, except upon the contingency hereinafter mentioned; now, it is by said Bank of N. A. agreed, in consideration of the premises, that in case the said A. shall, within ten days from this time, commence a suit against the said M., or other persons occupying or claiming a portion of the land east of the said lot of the said Bank of N. A., to establish the north line of his, said A.'s lot, and shall succeed in establishing a line, which, when extended in the same course to Broad street, would include in the lot conveyed to said bank by him more than the above width of twenty-nine feet and three-fourths of an inch, the bank will, thereupon, within ten days from the final termination of said suit, pay to said A., his heirs and assigns, for all the land included in the lot of the said bank exceeding said twenty-nine feet and three-fourths of an inch, at the same rate per foot, as the said bank has paid or agreed to pay for said twenty-nine feet and three-fourths of an inch; provided, it be determined in said suit that the said A. has a good title to said land." Within the time stipulated, the plaintiff, A., brought his suit against M., who claimed a portion of the plaintiff's lot east of the lot conveyed by him to the bank, and established the north line of his said lot, so that the line, extended in the same course to Broad street, would include in the lot by him conveyed to the bank more than the twenty-nine feet and three-fourths of an inch; *Held* that under the contract, the plaintiff was entitled to recover, at the agreed rate, for all the land included in the defendant's lot, by the line so extended beyond the twenty-nine feet and three-fourths of an inch, although the suit had not settled the right of the defendant to the line so extended; the words, " said land," in the proviso, referring to the land for which the suit was brought, and not to the land of the defendant.

ASSUMPSIT, to recover $1640.37, with interest, the price of a fractional part of a lot of land, sold by the plaintiff to the defendant, under a special agreement relating thereto which was counted upon in the declaration. Plea, the general issue.

The case was submitted to the court in fact and law; and from the proof and admissions of the parties it appeared, that the plaintiff, Aborn, was the owner of a lot of land in the City of

Providence, bounded,—westerly, on Broad street; southerly, on a gangway called Aborn gangway, extending easterly from said street to the channel of the river; and northerly, on land of one Lewis P. Mead. Across both this lot and that of Mead was a new street, running northerly from Pine street to Long Wharf street, so called. In 1854, Aborn sold to the defendant corporation that portion of his lot lying between Broad street and said new street, for the agreed consideration of $28,000; and by his deed dated December 28th, 1854, and subsequently delivered to said corporation, conveyed to them his lot by the following description:—

"A lot of land with all the buildings and improvements thereon, situate on Broad street in said City of Providence, and bounded, westerly, on said street, on which it measures thirty feet or more, and holding the width of thirty (30) feet, measuring at right angles with the north and south lines of said lot, it extends back easterly to, and bounds easterly on, a new street twenty feet in width, as now laid out, leading from Pine street to Long Wharf street, bounded northerly on land of Lewis P. Mead, on which it measures about two hundred twenty-seven and three-tenths feet, southerly on Aborn's gangway, so called, on which it measures about two hundred thirty-four and one-half feet."

Before payment of any portion of the agreed consideration, it was ascertained by the bank, that said Mead, upon whom this land was bounded on the north, claimed title to a portion of the land described in the deed; that Aborn and Mead both agreed in this at the time of the execution of the deed, that the dividing line between their respective lots, both of which extended to the river, was one straight line, commencing at some point on Broad street and running easterly to the harbor line. They differed, however, in this,—Mead claiming that the line began at a point on said street thirty feet distant, measuring on said street from the Aborn gangway mentioned in the deed, leaving to said Aborn lot a width only of twenty-nine feet and three-fourths of an inch, measured at right angles, while Aborn insisted that said line was distant from said gangway at least thirty feet, measured at right angles with said gangway, and might be more. With this dispute existing as to part of the premises, the bank declined to pay their

money for any more, at least, than appeared to be undisputed at the time. Aborn requested them to commence a suit against Mead, to try the title, at his, Aborn's, expense, offering them an indemnity against all costs and expenses in such suit; but the bank refused to sue, insisting that any suit should be carried on by Aborn in his own name. Under these circumstances, it was agreed between the parties, that the bank should pay, and it did pay, to Aborn, the price of that portion of the land the title of Aborn to which was undisputed, and with regard to the portion of the price due for that part of the lot claimed both by Aborn and by Mead, the parties made an agreement, entered upon the minutes of the defendant bank, as follows :—

"At the regular meeting of the board, September 10th, 1855, it was voted, that, whereas, the estate purchased by us of James A. Aborn is, in the deed thereof, described as being thirty feet in width upon a line drawn at right angles to the north and south lines thereof, and a portion thereof is claimed by Lewis P. Mead, so that this corporation is in the possession only of twenty-nine feet and three-fourths of an inch in the width measured as above ; and, whereas, it has been agreed between us and the said Aborn, that upon the present payment by us to him, of such proportional part of the purchase money as twenty-nine feet and three-fourths of an inch are to thirty feet, he will release us from all further claim, except upon the contingency hereafter mentioned ; now, it is by this corporation agreed, in consideration of the premises, that in case the said Aborn shall, within ten days from this time, commence a suit against the said Mead, or other persons occupying or claiming a portion of the land east of our said lot, to establish the north line of his, the said Aborn's, lot, and shall succeed in establishing a line, which, when extended in the same course to Broad street, would include in the lot conveyed to us by him, more than the above width of twenty-nine feet and three-fourths of an inch, we will thereupon, within ten days from the final termination of said suit, pay to the said Aborn, his heirs and assigns, for all the land which shall be included in our lot exceeding said twenty-nine feet and three-fourths of an inch, at the same rate per foot as we have paid or agreed to pay for the said twenty-nine feet and three-fourths of an inch, provided it be deter-

mined in said suit that the said Aborn has a good title to said land."

"September 10th, 1855.

" I do not understand that the within vote, which proposes a settlement between the Bank of North America and James A. Aborn, violates the spirit of the agreement between me and the said bank, dated the twenty-sixth day of March last; therefore, I have no objection to make against said settlement.

(Signed,)     Lewis P. Mead.

A. E. Bradley."

Within the ten days after this contract was entered into, Aborn commenced his action of trespass and ejectment against the said Mead, who claimed a portion of the land east of the land conveyed, to establish the north line of his, the said Aborn's lot. The land claimed in this suit was bounded northerly upon the said Mead's land, and by the same line extended, as was the lot conveyed to the said corporation.

This suit was answered and defended by the said Mead, and was prosecuted by the said Aborn to final judgment, which was given in his favor, by which his title to the land sued for, as against the said Mead, was established up to the line extending from Broad street to the river,—claimed by the said Aborn as the dividing line of the land of them, the said Aborn and Mead.

This line, extended from the land described in the suit, included in the lot conveyed more than the width of twenty-nine feet and three-fourths of an inch, before paid for by the bank.

*T. A. Jenckes*, for the plaintiff.

*B. N. Lapham*, with whom was *William H. Potter*, for the defendants.

Brayton, J. The defence set up in this suit is, that the plaintiff has not performed the stipulation in this agreement on his part to be performed, and this defence is founded upon the language of the proviso to the contract,—" provided it be determined in said suit that the said Aborn has a good title to said land." It is this, that, although said Aborn has, in the suit prosecuted by him against said Mead, succeeded in establishing a line which, when extended in the same course to Broad street, would

include in the lot conveyed more than the twenty-nine feet and three-fourths of an inch for which no payment had been made, and it has been·determined in the same suit that he, Aborn, had a good title to the land sued for, that suit did not determine that Aborn had a good title to the land described in the deed beyond what had been paid for by the bank, and that the words in the proviso, " said land," refers not to the land for which suit was to be brought, but to the land described in the deed and not paid for.

If the defendants mean, that Aborn's title to the land described in the deed should be so established, that the judgment in the suit could be pleaded in bar or given in evidence, in a suit therefor between Mead and the bank, it was a condition clearly impossible. The suit, which, by the contract, Aborn was to commence, could not, in the nature of things, so determine his title, because, first, the suit was to be between other parties than Mead and the bank, and for other land than that conveyed ; and, secondly, Aborn had already conveyed to the bank all the land described in the deed, if he had title at the execution of the deed, and to prove that he then had title was only to prove that, at the time of this contract, it was not in him, but in the bank.

In penning this agreement, it was clearly in the contemplation of the parties, that through the instrumentality of the suit provided, the validity of Aborn's conveyance, as to the land not paid for, would be settled to the satisfaction of the parties ; that they intended to abide by a determination in a suit in which the title to the particular land should not come directly in issue, but indirectly only, and in which the bank should not be involved as a party plaintiff or defendant, and down to the proviso, the parties are providing how it was to be done, viz., by the establishment, in such suit, of a boundary line,—one line,—as the north line of Aborn's remaining land ; and as the north line of his entire lot, both the land conveyed and the land now to be sued for, was one or the same straight line from Broad street to the river, the line determined in the suit need only be produced to Broad street, to determine where was the true north line of the land conveyed.

It is not to be presumed that the parties, having this purpose in mind, and having provided this mode of carrying it into effect, intended, by the words of the proviso, to nullify the contract, and

Aborn *v.* The Bank of North America.

require a suit to be brought and prosecuted which could determine nothing. This should be rejected as impossible. We are bound to give some other effect to these words which shall be consistent with what precedes,—with what is, beyond question, the general intent and purpose of the parties.

The proviso shows great caution, or, as it might be characterized, extreme caution; it may be, a wise caution. The suit, in the terms of the contract, might be brought against any one,—not Mead only, but any person *occupying* the Aborn land east of the land conveyed, or any portion of it. The mere occupant might not claim title. The title might not be put in issue in such suit; the mere right of possession only might be put in issue, and a line thus determined would not be satisfactory. The proviso requires, that the *title* to the land involved in the suit shall be put in issue, and, up to the line so found, shall be adjudged to be in Aborn.

Indeed, the only way to give effect to the proviso, without avoiding the whole agreement, is, to refer the words, " said land," to the land which might be involved in the suit to be brought, and not to the land conveyed by the deed. We think, therefore, that within the meaning of this contract, the plaintiff has performed on his part what he stipulated to perform; having commenced his action in good faith, for the purpose of establishing the north line of his land, and succeeded in establishing a line, which, when extended in the same course, includes in the lot conveyed more than the width of twenty-nine feet and three-quarters of an inch, and procured a determination in said suit that his title to the land bounded north by said line is good; and judgment must be for him, for the price of the land thus shown to have been conveyed and not yet paid for, at the rate stipulated amounting, with the interest thereon, to the sum of $1727.71.

NOTE.—Judge Bosworth did not sit in any of the cases reported as heard and determined at this term, or after it; being confined to his house, whilst he lived, by the disease (consumption) which terminated his life on the 10th day of June, 1862.